# Byrne, Ryan, & Co. *vs* Schwing, and Schwing *vs* Byrne. Ryan, & Co. two cases.

ASSUMPSIT.

WRITS OF ERROR TO THE JEFFERSON CIRCUIT.

*Case* 38.

*Assumpsit. Bills of exchange. Factor. Parol proof.*

JUDGE BRECK delivered the opinion of the Court.

Oct. 15.

THESE cases will be considered together. The first was an action of assumpsit brought by the plaintiffs in error against Alsop and Schwing. During the progress of the cause Alsop died, and the suit was afterwards prosecuted against Schwing, as surviving partner, who plead non assumpsit, and upon the trial of the cause, the Court instructed the jury to find as in case of a non suit, and a verdict and judgment were rendered for the defendant. To reverse that judgment, Byrne, Ryan, & Co. prosecute this writ of error.

The case stated.

Whether the Circuit Judge erred in the instruction to the jury, is the only question for our determination.

The case, as made out by the plaintiffs upon the trial, was summarily this:

Alsop & Schwing, manufacturers of flour in the city of Louisville, in 1833 and 1834, shipped a large quantity of flour to the plaintiffs, commission merchants in New Orleans, and drew upon them from time to time, bills of exchange to a large amount, which were accepted and a portion of them paid, and the residue protested and returned upon the drawers.

In April, 1834, the plaintiffs rendered an account to Alsop & Schwing, in which they charge them with all the bills drawn upon and accepted by them, a portion of them not having then matured, and also for commissions and other items, and credit them with the whole amount of the proceeds of the sale of their flour. The account thus rendered, left a balance in favor of the plaintiffs of near nine thousand dollars. In September, 1835, a further account was rendered, in which Alsop & Schwing were

BYRNE, RYAN,
& Co.
*vs*
SCHWING.

credited with bills with which they had been charged in the former account, but which had not been paid by the plaintiffs, but returned and paid by the drawers. The credit thus given extinguished the balance in favor of the plaintiffs upon the previous account, and left a balance in favor of Alsop & Schwing of near two hundred dollars.

The first account shows the sales of flour and to whom made, and appended to it is a statement of notes, then under protest, to the amount of about fifteen thousand dollars, and which had been taken by the plaintiffs for the flour of Alsop & Schwing, and for which they were credited in the account rendered. These notes it appeared, had been taken payable to the plaintiffs, and had been negotiated by them in Banks in New Orleans. By an account exhibited by the plaintiffs upon the trial, they charge Alsop & Schwing with these notes, amounting to $15,756 47, and credit them with three bills of exchange, with which, or rather with a bill for $4 200, for which they had been given, they had been formerly charged, having been accepted by the plaintiffs, but which they had failed to pay, amounting to $4.542 12, and also with $4,627 05, which had been paid to the Banks upon the notes by the drawers, and also with the balance in favor of Alsop & Schwing, upon the account of September, 1835. These items taken from the amount of the notes, left a balance of $6,402, and this sum the plaintiffs claimed a right to recover. It appeared that nothing had been paid upon the notes by the drawers, except the sum credited upon the foregoing account, and it did not appear that the plaintiffs had paid any portion of the residue to the holders, the Banks. When these notes were discounted by the plaintiffs, does not certainly appear, but the facts in the case very clearly authorize the presumption that it was shortly after they were taken, and when it is not certainly shown to have been necessary to take up the bills of Alsop & Schwing.

In regard to the sale of the flour, it does not appear that any instructions were given by Alsop & Schwing. The plaintiffs charge no commissions for a guaranty of payment where the sales were made upon time, nor does it appear that in such cases, they were to be responsible.

The proof is, that it is customary in New Orleans, to sell the article of flour, when sales cannot be advantageously made for cash, on a credit from 30 to 120 days; that where no instructions are given by the principal, it is left to the discretion of the factor or agent to sell for cash or on a credit, according to circumstances; that such was the usage among merchants in New Orleans, and where the sales were on time, it was customary for the agent or commission merchant to take notes payable to himself; that flour could not be kept long on hand without sustaining injury, and that consequently the interest of the consignor rendered it important that much should be left to the discretion of the agent as to the time and manner of vending it.   It was in proof that the houses to which the flour was sold, for which the notes in question were given, were at the time, reputable mercantile houses, and in good credit in New Orleans,

BYRNE, RYAN, & Co.
vs
SCHWING.

But independent of the usages of trade in New Orleans, as to the sale of produce by commission merchants, upon a credit, when not otherwise instructed, and to take notes payable to themselves, such seems to be the general law upon the subject; and it follows of course, that where there has been no abuse of discretion and the merchant has acted in good faith, the loss, when the purchaser upon a credit fails to pay, falls upon the owner or consignor.   We come to the conclusion, therefore, in view of the facts in this case, that the plaintiffs incurred no liability on account of the sale of the flour, and in taking therefor the notes which were subsequently protested.

Where consignments are made of property to a factor or agent for sale, he is authorized to sell for cash or on credit, according to the usage of the place where the sale is to be made— If he acts in good faith he is not responsible for losses.

But they cashed the notes and received the money upon them, which, together with the proceeds of the residue of the flour, realized by them, exceeds the entire amount of their claims upon Alsop & Schwing by near five thousand dollars.   If these notes were converted by the plaintiffs, when it was not necessary to enable them to meet the drafts of Alsop & Schwing, and not for that purpose, but for their own accommodation, and they appropriated the proceeds to their own use, it seems to us very clear, upon that hypothesis, that they manifested no right to recover.   Such a conversion of the notes would be a breach of trust, which would render them responsible to the

But in case of a sale by a factor on credit, if he cash the notes and appropriate the proceeds when not necessary to meet acceptances of the bills of the consignor, it is a breach of trust and renders the factor responsible.

BYRNE, RYAN,
& Co.
vs
SCHWING.

consignors, who from that time would cease to have any interest in them, and from that time the plaintiffs should be regarded as having made the debts their own; and whether the notes were paid or not, would not affect their liability.

And though he may have endorsed the notes cashed and was afterwards compelled to take them up, he has no right of action against the consignors in assumpsit, unless they had been tendered to the defendants as the proceeds of their consignments, before suit.

But suppose they were discounted for the purpose of enabling the plaintiffs to meet the bills of the consignors and the proceeds were, at the time, applied in that way, still, we think, they show no right to recover. Upon that supposition, their liability as assignors of the notes to the assignees, would be incurred for the use and benefit of the consignors. Their attitude in that respect, would in effect, be that of sureties or guarantors, for the use of the consignors, and should they, upon the failure of the drawers, be liable and pay the notes, their right in this form of action, to come upon their principals, would be unquestionable. But they have paid·nothing upon these notes. It is true it may be assumed that upon the failure of the drawers to pay, they became liable for their payment. But for such liability merely, they have no right to recover in this form of action. Had they, as endor-sers, taken up the notes, they would again have become the legal holders, and upon being paid their disbursements, it would be their duty and they would be able to deliver them to the consignors as proceeds of their flour. But they have not .taken them up, by payment or otherwise, and may never do it. Had they acquired the notes and tendered them to Alsop & Schwing, *that* might have entitled them to recover. But the assignees are still the legal and equitable holders; the plaintiffs had discharged no portion thereof, and were consequently not entitled to recover in this action.

We perceive no error, therefore, in the peremptory instruction by the Court below to the jury.

Second case stated.

In the suit of Schwing, as surviving partner of Alsop & Schwing, against Byrne, Ryan, & Co, which was also in assumpsit, the defendants plead non assumpsit. The plaintiff, upon the trial, read as evidence to the jury, three bills of exchange drawn by Alsop & Schwing in July, 1834, upon six, nine, and twelve months, upon and ac-cepted by the defendants, and proved that after they were

protested for non payment, Alsop & Schwing had taken them up from the holder, the Bank of the United States at Louisville, by the note of Jas. Anderson, which was paid or arranged. Objection was made and overruled, to the testimony in regard to the note of Anderson, unless the note were produced. It was also in proof that the three bills had been given to take up a previous bill for $4,200, drawn and accepted by the same parties.

Upon this testimony, a motion for a non suit having been overruled, the defendants introduced all the testimony before the jury in their suit against the plaintiff.

Additional testimony was also introduced by the plaintiff, conducing to prove that when the draft for $4,200 was taken up, it was admitted by Ryan, one of the firm of Byrne, Ryan, & Co., that the draft was due Alsop & Schwing on the settlement they had made, from Byrne, Ryan, & Co., who had received and sold flour to meet it, and that it was their *proper debt*; that the arrangement to take it up was made with the Bank for the accommodation of the defendants, and the three drafts were drawn and accepted accordingly. Rebutting testimony upon this point, was also introduced by the defendants, and which also tended to prove that they had claimed a large amount as due them from Alsop & Schwing, on account of the bad debts or protested notes.

A verdict and judgment having been rendered for the plaintiff for $6,836 30, the defendants have brought the case to this Court for revision.

Whether the motion for a non-suit was properly overruled, is the first question for consideration.

The legal presumption in regard to a bill of exchange, is that the acceptor is indebted to the drawer, or has in his hands funds of the drawer to the amount of the bill: (*Chitty on Bills*, 595.) The bills in this case, therefore, and proof, that after they had been protested for non-payment, they had been taken up by the drawers, were *prima facie*, sufficient to sustain the plaintiff's action, upon the common counts for money had and received, &c., and to entitle him to recover.

The exception to the testimony in regard to the note of Anderson, was properly overruled. The taking up of the

The legal presumption is, that the acceptor of a bill of exchange has funds of the drawer in his hands to meet the bill accepted—and the possession of such accepted bill by the drawers shows *prima facie*, his right to recover the amount against the acceptor; and,

—It is unimportant to the right

BYRNE, RYAN,
& Co.
*vs*
SCHWING.

of the drawer to
recover, whether
the bill be taken
up by the pay-
ment of cash or
another note to
the holder.

bills was all that was necessary to entitle Alsop &
Schwing to their action, and whether this was done by
the payment of the money or by the note of Anderson,
was unimportant; nor was it important, as contended,
that the note of Anderson should have been paid before
the drawers instituted their suit.

2nd. It is insisted that the Circuit Judge erred in not
instructing the jury to find for the defendants, upon the
ground that the declaration was filed in the names of Alsop
& Schwing, after the death of the former.

Where a capias
issues in the
name of the firm
and one of the
firm dies before
the filing of the
declaration, it is
not error to file
it in the name of
the firm and then
suggest the death
of the deceased
member.

The writ was sued out in 1835, in the names of Alsop
& Schwing, in the lifetime of Alsop, but without filing a
declaration. After his death, in 1838, the declaration
was filed, in the names of Alsop & Schwing, and a day
or two afterwards, the death of Alsop was suggested upon
the record, and the suit prosecuted in the name of
Schwing. It is conceded that it would have been more
formal to have filed the declaration in the name of
Schwing alone and to have stated in it the death of Alsop.
In that case no suggestion of his death upon the record,
would have been necessary. But the declaration is in
conformity with the writ, and may, perhaps, be regarded
as having relation to the time of its impetration, and in
that case, there could be no doubt the record would be
right as it now stands. But waiving that view of the
case, the only difference between a strictly formal course
and the one pursued is, that the suggestion of Alsop's
death is made upon the record instead of being made in
the declaration. The difference could not have had the
effect to surprise the defendants, nor in any respect to pre-
vent a fair trial upon the merits. We are, therefore, not
satisfied that there was any error in refusing the instruc-
tion.

3dly. It is insisted that the Court ruled the law in the
instructions to the jury, upon the merits, erroneously and
to the prejudice of the defendants.

The Court, upon the motion of the plaintiff, gave the
following instructions:

"That if they believed, from the evidence, that in 1834,
the defendants, Byrne, Ryan, & Co., accepted the three
drafts shown in evidence, and Alsop & Schwing assumed

the five drafts to the Bank of Louisville in settlement of the accounts between them, and that Byrne, Ryan, & Co. fell in debt to Alsop & Schwing in the sum of $185 07, and that afterwards, the acceptances of Byrne, Ryan, & Co. were protested and paid by Alsop & Schwing, that then and in that case, the defendants, Byrne, Ryan, & Co., were liable in this action for the amount of their bills, with interest, and also the balance of $185 07, with interest."

2. "That if the jury believe from the evidence, that Byrne, Ryan, & Co. sold the flour of Alsop & Schwing, to Tufts & Clark and Cockeryne, Watts, & Co, on credit, and took their notes on time, to themselves, and dis. counted those notes at Bank and received the money on the discount of the notes, that then and in that case, the fact that Tufts & Clark, and Cockeryne, Watts, & Co. failed in business and to pay the notes, that those facts furnish no ground to defeat the plaintiff's right of recov. ery in this action, on the three bills and the balance of account of $185 07."

In order to understand the application of these instructions, it will be necessary to recur briefly to the facts of the case. The bill for $4,200, was drawn by Alsop & Schwing, and accepted by the defendants. It fell due in April, 1834, and was taken up by the three drafts in question, in July afterwards. In the account rendered by defendants in April, 1834, it was charged to Alsop & Schwing. Upon that account there was a balance in favor of the defendants of near $9,000. Subsequently the five drafts referred to in the first instruction, which had also been accepted by the defendants and were also charged in the account of April, 1834, were returned upon the drawers, and their account afterwards credited with the aggregate amount, which left a balance in their favor of $185 07. In striking this balance, the draft for $4,200 stood as a credit to the defendants, or as a debit against Alsop & Schwing. Whether the defendants, as between them and Alsop & Schwing, were equitably bound to pay it, depended upon whether they were responsible to Alsop & Schwing for the amount realized upon discounting the notes of Tufts & Clark and Cockeryne,

BYRNE, RYAN,
& Co.
vs
SCHWING.

Watts, & Co., although the notes were not paid. There was in their hands no other means of Alsop & Schwing, nor is it shown that there was any other consideration which imposed upon them, in reference to Alsop & Schwing, any obligation to pay it, The three drafts were drawn and accepted, so far as shown, upon no additional consideration moving from Alsop & Schwing. It is true they arranged the five drafts which were returned, but they had no funds in any view of the case, in the hands of Byrne, Ryan, & Co., to meet them, except the $185 07, which, together with the draft for $4,200 or the amount thereof, would be the entire balance coming to them, charging the defendants with the whole amount of sales of flour, including the notes which were unpaid.

The question then arises, whether, in view of the testimony tending to establish the state of case between the parties thus presented, the Court was right in rendering a settlement between them as stated in the first instruction, conclusive upon the defendants as to their liability to pay the plaintiff the three drafts and the $185 07, and excluding wholly from the consideration of the jury, the fact that the notes for a portion of the flour remained unpaid. The testimony as to a settlement when the three drafts were drawn and accepted, is wholly in parol. The supplemental account crediting Alsop & Schwing with the five drafts returned, and leaving the balance in their favor of $185 07, bears date in September, 1835, and only two days before both these suits were instituted.

In view of all the facts in the case, we are of opinion that the defendants should not have been concluded by the supposed settlement between the parties when the three drafts were accepted, nor by the supplemental account of September, 1835. Accounts, settlements, and even receipts are always susceptible of explanation and correction; and it seems to us that whether the defendants were liable for the three drafts in this action, which is based upon equitable principles, must at least depend upon their liability for the amount received upon the discount of the unpaid notes of Tufts & Clark, and others.

Accounts and settlements and even receipts, are always open to explanation and correction.

If, as we have before said, those notes were discounted when it was not necessary to enable the defendants to meet the drafts of Alsop & Schwing, and the proceeds were not appropriated to their use, but to the use and benefit of the defendants, it was an unauthorized conversion of them, and the defendants should be held responsible. But if on the other hand, they were discounted for the use and benefit of Alsop & Schwing, and were necessary to pay their drafts, and the proceeds were so applied, the defendants thereby incurred no liability to them. And if, upon the failure of the drawers, the defendants became legally liable as assignors, they would have a right to relieve themselves by the use of any funds in their hands of Alsop & Schwing; and although it is not shown that they have paid as assignors, any thing upon the notes, yet upon the supposition that the liability exists and was properly incurred for Alsop & Schwing, the latter could not, in equity, demand the proceeds of the notes or other funds, in the hands of the defendants, which were necessary to discharge them from such liability; nor upon such supposition would they be under any obligation, upon that account merely, to pay Alsop & Schwing the three drafts. The facts of their having charged Alsop & Schwing, in the account of April, 1834, with the draft of $4,200—of subsequently taking it up by accepting the three drafts, and the testimony as to the recognition of the debt as their own—a debt they were owing Alsop & Schwing, and the supplemental account in September, 1835, all these facts would be testimony tending strongly to show their liability to Alsop & Schwing for the entire sales of their flour, regardless of the non-payment of the notes of Tufts & Clark, &c. But all these facts they had a right, by testimony, to rebut and explain, and there is testimony in the record of that character. In the view which we have thus taken, the non-payment of the notes of Tufts, &c. might have opposed an obstacle to the plaintiff's recovery, and the Court erred, therefore, in the instructions to the jury.

In Byrne, Ryan, & Co. *vs* Schwing, the judgment is affirmed, but in Schwing *vs* Byrne, Ryan, & Co. it is reversed and the cause remanded, that a new trial may be

BYRNE, RYAN, & Co. *vs* SCHWING.

An acceptor of a bill of exchange may rightfully avail himself of any means of the drawer in his hands, to meet his acceptance.

granted and further proceedings had, consistent with the principles of this opinion.

*W. Morris* for Byrne, Ryan, & Co.: *Duncan and Guthrie* for Schwing.